IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

DONALD MAZIARZ,

    Plaintiff,

v.                                    Case No.: GJH-14-3615

CORIZON, INC., *et al.*,

    Defendants.

## MEMORANDUM OPINION

Plaintiff Donald Maziarz, who is incarcerated at the Jessup Correctional Institution ("JCI"), filed a Complaint pursuant to 42 U.S.C. § 1983 alleging that, beginning in 2010, he has been denied constitutionally adequate medical care for his cervical spine injury. ECF No. 5. Currently pending before the Court is a Motion for Summary Judgment filed on behalf of the following employees of Wexford Health Sources, Inc. ("Wexford"): Dr. Andrew Moultrie; Dr. Syed Rizvi; John Moss; Lashuana Grier; and Emanual Esianor (collectively, "Defendants").[1] ECF No. 71. Two responses have been filed on Maziarz's behalf; one pro-se and one by an attorney upon his entry into the case. ECF Nos. 75 and 77. Counsel for Plaintiff also filed a Motion for Continuance, ECF No. 76. In addition, Defendants have filed a Motion to Quash Maziarz's Request for Admission, ECF No. 78. *See* ECF No. 80. No hearing is necessary to resolve the motions. Loc. R. 105.6 (D. Md. 2016). For the reasons that follow, Defendants' Motion for Summary Judgment is granted, Maziarz's Motion for Continuance is denied, and Defendants' Motion to Quash is denied as moot.

---

[1] Pursuant to this Court's March 14, 2016 Order, the Court dismissed defendants Wexford, Corizon, Inc, individual Corizon employees, and JCI Warden John Wolfe. *See* ECF No. 66.

1

I.  **BACKGROUND**[2]

Maziarz was diagnosed with degenerative disk disease and spondylosis of the cervical spine while serving time in the custody of the Maryland Department of Correction at JCI. ECF No. 1 at 4.[3] Maziarz underwent surgery on February 29, 2012 and received follow-on treatment from that time through filing his Amended Complaint on January 7, 2015. ECF No. 5. Maziarz alleges that the medical care he received was not consistent, timely, or effective and his condition remains untreated or possibly exacerbated due to "JCI Medical Dept. and its overseers" not working together to coordinate appointments and provide complete treatment. ECF No. 1 at 4.

In his Amended Complaint, Maziarz named a number of defendants, including Corizon Inc. ("Corizon"), Wexford, JCI Warden John Wolfe, and individuals employed by Corizon or Wexford. ECF No. 5. Corizon provided health care services to Maryland inmates from January 2010 until June 30, 2012, at which time its contract with the State of Maryland was terminated and its health care responsibilities were transferred to Wexford. ECF No. 42 at 5–6. Thus, some individual defendants were employed by both corporations.

On March 14, 2016, this Court dismissed Maziarz's claims against defendants Corizon, Wexford, and Wolfe. ECF No. 67. The Court granted summary judgment in favor of individual defendants employed by Corizon, including Moss and Moultrie, for claims arising on or before June 30, 2012, because the evidence indicated that Maziarz received adequate medical treatment during the time in which Corizon provided him with health care services. ECF No. 66 at 15–16. However, the Court did not dismiss Maziarz's claims against the individual defendants employed

---

[2] A detailed factual and procedural background is provided in this Court's March 14, 2016 Order, ECF No. 66, and only facts necessary to the resolution of the pending motions are repeated herein. Unless stated otherwise, the facts are taken from the Amended Complaint, ECF No. 5, and assumed to be true.

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

by Wexford because Maziarz's Amended Complaint, ECF No. 5, alleged facts sufficient to state a claim that these individual defendants failed to provide Maziarz with constitutionally adequate medical care as a result of delay, interference, and withholding of medical services. ECF No. 66 at 16–17.

## II. STANDARD OF REVIEW

### A. Motion for Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a), which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "This standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). Thus, "[t]he party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).

On a motion for summary judgment, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002). The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his case as to which he would

3

have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

### B. Constitutionally Adequate Medical Care

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants—or their failure to act—amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The medical condition at issue must be objectively serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care).

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the

4

part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer* 511 U.S. at 844). If the requisite subjective knowledge is established, officials may avoid liability "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew existed at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000).

In essence, the treatment rendered must be so grossly incompetent or inadequate as to shock the conscience or to be intolerable to fundamental fairness. *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Miltier*, 896 F.2d at 851. Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837. Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *Quinones*, 145 F.3d at 168. Mere negligence or malpractice does not rise to a deprivation of constitutional rights. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986).

### III. DISCUSSION

Maziarz's medical records, provided by Wexford, indicate that once Wexford assumed health care responsibilities for JCI in July of 2012, the Defendants conducted multiple post-surgery examinations, administered medication and treatment instructions, and performed MRI and CT scans. ECF Nos. 71-3 and 71-4.

5

From July 2012 through January 2014, Maziarz met with Moultrie seven times whereby Moultrie conducted examinations, reviewed the results of a June 14, 2012 MRI, ordered additional MRI and CT scans to be performed at the Bon Secours Hospital due to Maziarz's complaints of numbness in his extremities, and reviewed the results of these additional scans with Maziarz. ECF No. 71-2 ¶¶ 26, 27, 29, 33, 36, 38, 40. Maziarz's June 14, 2012 MRI revealed, among other things, that "left foraminal stenosis at C7-T1, not seen previously . . . could be artifact resulting from differences in the exact level scan. Correlation with CT is suggested to assess bony detail." *Id.* ¶ 22. Maziarz received the additional CT scan on March 1, 2013 and the additional MRI on May 8, 2013. *Id.* ¶¶ 30, 34. Following his CT scan, Maziarz was examined by Dr. David Blanton, who noted that Maziarz's "cervical fusion was stable and no other abnormality found." *Id.* at 30. Following his MRI, Dr. Matthew Kalman reviewed the results and noted "that there was slight atrophy of the spinal cord at C6-7 level with no cord compression. It was also noted that there was moderate bilateral neural foraminal stenosis at C6-7 with severe left foraminal stenosis at C7-T1." *Id.* ¶ 34.

From July 2012 through November 2014, Physician's Assistant Moss met with Maziarz five times to examine him and refill his medication and at no time noted Maziarz to be in any apparent distress. *Id.* ¶¶ 31, 32, 39, 42, 45. Maziarz was examined by Rizvi on March 18, 2014 and June 2, 2014 due to complaints of neck pain, and Rizvi similarly noted that Maziarz was not in any apparent distress. *Id.* ¶¶ 41, 43. Due to his complaint of numbness, Maziarz was also examined by Dr. Bolaji Onabajo on August 12, 2013, who again noted that Maziarz was not in distress and did not have bone or joint pain or swelling. *Id.* ¶ 37.

In response to Defendants' Motion, Maziarz repeats statements made in his Amended Complaint regarding Defendants' failure to provide adequate care but does not contest any of the

6

facts set forth by the Defendants.[4] ECF No. 75 and 77. Maziarz introduces a letter from Dr. Ali D. Kanji, which provides an assessment of Maziarz's May 8, 2013 MRI results.[5] ECF No. 75-1. Kanji opines that at the time of his review, Maziarz's severe left foraminal stenosis at C7-T1 was "just as bad if not worse than it was at the time of the last scan" and that Maziarz "would seem to need an immediate assessment for present deficits by an orthopedic surgeon or pain management professional as needed." *Id.* At worst, in light of evidence demonstrating that he was receiving on-going treatment, this letter could be construed to suggest that Maziarz's surgery was not performed correctly or that Defendants' treatment plan was unsuccessful in addressing Maziarz's severe left foraminal stenosis at C7-T1. Even if true, this falls short of deliberate indifference to a serious medical need.

The record is clear that Defendants continually monitored Maziarz's progress, performed additional evaluations based on Maziarz's complaints of numbness, and provided what Defendants believed to be a reasonable course of action for Maziarz's recovery. Maziarz was not satisfied with the care he received (for example, Defendants' denied his request for feed-in status, ECF No. 71-2 ¶ 31, and Maziarz missed a neurosurgery consult due to a scheduling mix-up, *id.* ¶ 44), but his treatment under Wexford, like that received under Corizon, does not amount to a violation of his constitutional rights. The Defendants are entitled to summary judgment.[6] As this

---

[4] While Maziarz does not dispute the veracity of the medical records, he has filed a second Request for Admission as to the authenticity of the certified medical records. ECF No. 51 and 78. Maziarz's request does not preclude the Court from ruling on Defendants Motion for Summary Judgment, and Defendants Motion to Quash this request, ECF No. 80, is denied as moot.

[5] The letter is undated but was presumably written in January 2014 as Kanji notes that "we are now 8 months away from that last [May 8, 2013] MRI." ECF No. 75-1. Notwithstanding the discussion that follows, Kanji's signed but unsworn and undated letter cannot be used to oppose a motion for summary judgment. *See* Fed. R. Civ. P. 56(c)(1).

[6] Maziarz's Amended Complaint alleges that both Grier, who was vested with the authority to coordinate inmates' medical care and concerns with security staff, ECF No. 5 at 6, and Esianor, another Physician's Assistant, *id.* at 7, failed to properly treat Maziarz. Those claims are not addressed in Defendants' Statement of Facts Not in Genuine Dispute, ECF No. 71-2, but Plaintiff has failed to provide evidence demonstrating their reckless indifference. Maziarz's medical records do not indicate that Maziarz was personally seen by either Grier or Esianor, and Maziarz

7

Court previously stated:

> Any delays in providing treatment, diagnostic evaluations, or follow up care which have occurred do not appear to be deliberate, nor have they resulted in any harm to Maziarz. Maziarz's numerous grievances with the medical decisions made regarding what tests and treatments are necessary in light of the symptoms presented are reflective of his frustration, but "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3rd Cir. 1970)). There are no exceptional circumstances alleged in this case.

ECF No. 66 at 15.

In addition to responses to Defendants' Motion filed by both Maziarz and Maziarz's attorney, ECF Nos. 75 and 77, Maziarz's attorney filed two identical Motions for Continuance. ECF Nos. 75 and 76. The only support offered for the request is that Maziarz has only recently retained counsel, and he requires time to sufficiently prepare his case. *Id.* Maziarz has not provided any specific reasons as to why he cannot present facts, or what additional discovery he may need, to oppose Defendants' Motion. *See* Fed. R. Civ. P. 56(c); *see also Works v. Colvin*, 519 Fed. Appx. 176, 183 (4th Cir. 2013) ("parties wishing to obtain additional discovery must specifically allege why information sought would have been sufficient to create a genuine issue of material fact such that it would have defeated summary judgment") (internal citation omitted). Maziarz has not elected to support his claim with additional evidence beyond the allegations made in his Amended Complaint, and the Motion for Continuance is denied.

## IV. CONCLUSION

For the reasons stated, Defendants' Motion for Summary Judgment, ECF No. 71, is granted. Plaintiff's Motion for Continuance, ECF No. 76, is denied, and Defendants' Motion to

---

offers no additional evidence to suggest otherwise. The Court finds that the staff of Wexford as a whole did not violate Maziarz's rights and has no basis to infer that Grier or Esianor individually violated Maziarz's constitutional rights.

Quash, ECF No. 80, is denied as moot. A separate Order follows.

Date: September 21, 2017

_____
GEORGE J. HAZEL
United States District Judge